1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  MARK DUFFY,                              **Case No. 1:15-cv-00423-EPG**

12              Plaintiff,                   **ORDER RE: DEFENDANTS' MOTION TO DISMISS**

13       v.

14  LOS BANOS UNIFIED SCHOOL
    DISTRICT; STEVE TIETJEN; RYAN            (ECF No. 15)
15  HARTSOCH; DANIEL SUTTON; VELI
    GURGEN; and DOES 1-10,
16
                Defendants.
17

18  **I.    INTRODUCTION**
19
            In his Complaint, teacher Mark Duffy ("Plaintiff") claims he suffered retaliation from
20
    Defendants, the Los Banos Unified School District, its superintendent, and the principal and vice
21
    principals of Los Banos High School, for speaking out against the superintendent at a community
22
    meeting held by the school board. Defendants moved to dismiss on the bases of sovereign
23
    immunity and qualified immunity. While Defendants are correct that the *school district* is
24
    protected by sovereign immunity, they are not correct when it comes to the *individuals* who
25
    allegedly retaliated against Plaintiff for his speech at the public meeting.
26
            Contrary to Defendants' argument, the law governing the school officials' conduct is
27
    clearly established. As the U.S. Supreme Court held in *Pickering v. Board of Education*, 391 U.S.
28

                                              1

563, 572 (1968), "[t]eachers are, as a class, the members of a community most likely to have informed and definite opinions . . . [I]t is essential that they be able to speak out freely on such questions without fear of retaliat[ion]." The Ninth Circuit has, consequently, repeatedly reaffirmed "the importance of allowing teachers to speak out on school matters." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 514 (9th Cir. 2004); *see also Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009). While it remains to be seen if Plaintiff can prove his allegations and whether Defendants have any valid defense, there is no question that Plaintiff has alleged of violation of his First Amendment right to free speech.

## II.    BACKGROUND

This case arises out of statements Plaintiff made at a school board meeting in 2012. According to the Complaint, Plaintiff has been employed as an English teacher at Los Banos High School in Los Banos, California for nine years. Before the 2012 meeting, Plaintiff received positive performance reviews and his students demonstrated success in objective testing metrics. He also received "Teacher of the Year" awards from the student body for six out of his first seven years as a teacher at the high school. Plaintiff suffered a heart attack in 2008, but returned to work with a rest period accommodation.

In 2007, Defendant Steve Tietjen became superintendent of the Los Banos Unified School District (the "School District"). Tietjen was perceived as a "poor administrator and Machiavellian who bullied and divided staff." (Complaint ¶ 11, ECF No. 2.) Tietjen also had a reputation for retaliating against those who opposed him by firing, demoting, or transferring teachers who raised objections to his decisions.

In August 2012, Tietjen announced that he would be transferring Daniel Martin, the principal of Los Banos High School. Martin, who had been a popular principal at the high school for six years, had expressed opposition to Tietjen and was to be transferred to an administrative position at the "school bus barn." *Id.* at ¶ 12. This transfer was perceived as a demotion; the high school position was viewed as a significantly more prestigious post.

The transfer raised concerns within the community to the point that a community meeting was convened. The meeting, which was overseen by the Board of the School District, was held on

August 9, 2012. Many members of the general public, as well as school district employees and students, were present at the meeting. The meeting was also televised on the local public access channel.

Plaintiff delivered a speech at the meeting criticizing Tietjen in which he stated that:

- "[T]hose who spoke out against Dr. Tietjen did so at their own peril and that repercussions and intimidation would ensue";

- Under Tietjen, "fear was 'the standard operating procedure'" of the School District and "everyone in the district 'walked on eggshells'";

- Tietjen would "engag[e] in personal attacks," hold "faculty members' jobs over their heads," and "encourage[e] faculty members to report one another";

- Tietjen was a "punk" who was "bushwacking" Martin;

- The public should "hold Dr. Tietjen to 'the same low standard' when his position came up for review"; and,

- Tietjen's regime was like "Nazi Germany."

*Id.* at ¶ 14. Tietjen was displeased with Plaintiff's statements.

After the meeting, Defendants engaged in a pattern of conduct designed to intimidate and harass Plaintiff.[1] Specifically:

- Defendants transferred Plaintiff out of the Advance Placement English class he had taught for several years and into a class for students with academic and behavioral difficulties;

- Defendants rescinded the medical accommodation Plaintiff had received since the return from his heart attack;

- Defendants began monitoring the classes Plaintiff taught and questioned his students about his teaching practices;

- Defendants began disciplining Plaintiff for minor issues (while ignoring the same issues for those who supported Tietjen); and,

- Defendants began stating that Plaintiff was harassing them after Plaintiff had several chance encounters with the individual Defendants in and around town.

In September 2013, Plaintiff suffered a second heart attack. In response, Tietjen launched an investigation to determine whether Plaintiff had faked his heart attack. As part of that

---

[1] Defendant Ryan Hartsoch became principal of Los Banos High School in November 2012. Defendants Daniel Sutton and Veli Gurgen are vice principals at Los Banos High School.

1   investigation, he sent a school nurse to the emergency room to confirm that Plaintiff had been
2   admitted.

3      Plaintiff received written reprimands shortly thereafter and was accused of "trying to
4   intimidate" Defendants Sutton and Gurgen multiple times over the next two months. Defendant
5   Hartsoch also claimed that Plaintiff "harassed and followed" him over the Thanksgiving holiday
6   in November 2013, although Plaintiff was out of town. In December 2013, Plaintiff received a 15
7   day unpaid suspension.

8      On June 30, 2014, Defendants filed a petition for a workplace violence restraining order
9   seeking protection for Defendant Hartsoch and his family. A temporary restraining order was
10  granted on July 1, 2014 and Defendants served Plaintiff with a notice of unprofessional conduct
11  on July 11, 2014. The notice advised Plaintiff that his employment would be terminated if his
12  conduct did not improve in the next 45 days.[2] On July 22, 2014, Merced County Superior Court
13  issued a restraining order protecting Defendant Hartsoch from Plaintiff, purportedly based on
14  evidence manufactured by Defendants. Defendants publicized the restraining order in local media
15  outlets.

16     On October 9, 2014, Defendants informed Plaintiff that he would be administratively
17  terminated effective October 22, 2014 for exhausting his family medical leave. On October 17,
18  2014, Plaintiff was placed on paid administrative leave and was prohibited from contacting any
19  School District employees, students, or parents of students. On October 31, 2014, the School
20  District contacted Plaintiff and informed him that he would be required to sit for an interview on
21  November 6, 2014 as part of an investigation into his "misconduct." Plaintiff refused.

22     On November 8, 2014, Tietjen claimed in local media outlets that Plaintiff had sent
23  harassing letters to Tietjen's wife. Plaintiff alleges that this was done to influence the outcome of
24  elections to the Los Banos Unified School District Board, whose support Tietjen relied upon for
25  his position. On November 28, 2014, Defendants informed Plaintiff that his employment would
26  be terminated based on their investigation. Defendants once again informed local media. Plaintiff

27
28  _____
    [2] Plaintiff was on medical leave at this time.

1  contends that the "misconduct" alleged in the termination notice is wholly fabricated. Defendants

2  served Plaintiff with a second notice of intended termination on December 19, 2014.

3      Plaintiff now alleges three causes of action against Defendants:

4  • First Cause of Action (against Defendants Tietjen, Hartsoch, Sutton, and Gurgen),
   alleging retaliation for the exercise of Plaintiff's First Amendment rights under 42
5  U.S.C. § 1983;

6  • Second Cause of Action (against Defendant Los Banos Unified School District),
   alleging *Monell* liability under 42 U.S.C. § 1983; and,
7

8  • Third Cause of Action (against Defendant Los Banos Unified School District), for
   injunctive relief under 28 U.S.C. § 2201.

9      On May 19, 2015, Defendants Los Banos Unified School District, Steve Tietjen, Ryan

10  Hartsoch, Daniel Sutton, and Veli Gurgen ("Defendants") filed a Motion to Dismiss Plaintiffs'

11  Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6) (the "Motion").

12  (ECF No. 15.) Plaintiff Mark Duffy filed a timely opposition to the Motion.

13      The Court has reviewed the papers and determined that this matter is suitable for decision

14  without oral argument pursuant to Local Rule 230(g).

15      After a review of the pleadings and the for the reasons set forth below, Defendants'

16  Motion is GRANTED IN PART and DENIED IN PART.

17  **III.   LEGAL STANDARDS**

18      Defendants state that the Motion is brought under Federal Rules of Civil Procedure

19  12(b)(2) and 12(b)(6) and the Motion provides the legal standard for a motion to dismiss based on

20  a factual challenge under Federal Rule of Civil Procedure 12(b)(1), but the issues raised by the

21  Motion—sovereign immunity and qualified immunity—are properly brought under Rule 12(b)(1)

22  and Rule 12(b)(6), respectively. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Jensen v.*

23  *City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). Because Defendants' 12(b)(1) Motion is a

24  facial challenge to the Court's subject matter jurisdiction, rather than a factual challenge, the

25  Court applies the 12(b)(6) legal standard. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)

26  ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

27  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

28  favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

court's jurisdiction").

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). Legally conclusory statements, when unsupported by actual factual allegations, need not be accepted. *Ashcroft*, 556 U.S. at 678-79.

## IV.   DISCUSSION

Defendants assert that portions of the Complaint should be dismissed on two grounds. First, they argue that both of Plaintiff's § 1983 claims (the first two causes of action) are barred by sovereign immunity created by the Eleventh Amendment to the U.S. Constitution. Second, they claim that Defendants Tietjen, Hartsoch, Sutton, and Gurgen should be protected by qualified immunity because Plaintiff did not enjoy a right "to be free from increased supervision and possible termination after making shocking public statements likening the school superintendent to Adolf Hitler." (Motion to Dismiss 6:11-12, ECF No. 16.)

### A. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment "prohibits actions for damages against state agencies when Congress has failed to express a contrary intent." *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992), *citing Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985). In California, school districts are "state agencies" within the definition of the Eleventh Amendment. *Id.* at 254. This bar does not, however, apply to "suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Nor does it apply to suits for prospective declaratory and injunctive relief against state officials sued in their official capacities. *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir.

1  2000) ("courts have recognized an exception to the Eleventh Amendment bar for suits for
2  prospective declaratory and injunctive relief against state officers, sued in their official capacities,
3  to enjoin an alleged ongoing violation of federal law").

4       Plaintiff concedes that the School District "is a state agency for purposes of retrospective
5  damages suits" and acknowledges that the damage claim against the School District "is now
6  subject to dismissal." (Opposition to Motion to Dismiss ¶5, ECF No. 23.) Plaintiff's Second
7  Cause of Action, a *Monell* claim for compensatory damages against the School District, must thus
8  be dismissed.

9       Defendants are incorrect, however, that Plaintiff's First Cause of Action, alleging First
10  Amendment retaliation, should be similarly barred. The Eleventh Amendment does not bar
11  actions against state officials sued in their individual capacities. *Hafer*, 502 U.S. at 31. Each of
12  the targets of the First Cause of Action—Tietjen, Hartsoch, Sutton, and Gurgen—is being sued in
13  their individual capacities. (Complaint ¶¶ 5-8, ECF No. 2.) Plaintiff's First Cause of Action may
14  thus proceed, even in the face of the School District's sovereign immunity.

15  **B. Qualified Immunity**

16       Defendants next argue that Plaintiff's First Cause of Action is barred because the
17  individual Defendants are protected by qualified immunity. A public official acting within the
18  scope of her employment receives qualified immunity unless her conduct violates "clearly
19  established statutory or constitutional rights of which a reasonable person would have known."
20  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Fogel v. Collins*, 531 F.3d 824, 829 (9th Cir.
21  2008). If such an official receives qualified immunity, she is afforded absolute immunity from a
22  law suit challenging those actions. *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled*
23  *on other grounds by Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (qualified immunity affords
24  "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is
25  effectively lost if a case is erroneously permitted to go to trial") (emphasis in original). The
26  central intent behind qualified immunity is to provide "ample protection to all but the plainly
27  incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341
28  (1986).

1    To determine whether an official is protected by qualified immunity, courts must ask:  (1)

2    whether "the facts the plaintiff alleges show a violation of a constitutional right"; and, (2) whether

3    that right was "'clearly established' at the time of the alleged misconduct." *Carillo v. Cnty. of Los*

4    *Angeles*, 798 F.3d 1210, 1218 (9th Cir. 2015), *citing City & Cnty. of San Francisco v. Sheehan*,

5    ___ U.S. ___, 135 S.Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly

6    established right unless the right's contours were sufficiently definite that any reasonable official

7    in his shoes would have understood that he was violating it, meaning that existing precedent

8    placed the statutory or constitutional question beyond debate"). If the public official violated a

9    clearly established constitutional right, she does not receive qualified immunity for her actions.

10    *1.  The right was clearly established at the time of the alleged misconduct.*

11    The First Amendment embodies a "profound national commitment to the principle that

12    debate on public issues should be uninhibited, robust, and wide-open, and that it may well include

13    vehement, caustic, and sometimes unpleasantly sharp attacks on government and public

14    officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), *citing Whitney v.*

15    *California*, 274 U.S. 357, 375-376 (1927) ("Those who won our independence believed . . . that

16    order cannot be secured merely through fear of punishment for its infraction; that it is hazardous

17    to discourage thought, hope and imagination; that fear breeds repression; that repression breeds

18    hate; that hate menaces stable government; that the path of safety lies in the opportunity to

19    discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil

20    counsels is good ones").

21    The U.S. Supreme Court long ago established that teachers enjoy the First Amendment

22    right to "comment on matters of public interest in connection with the operation of the public

23    schools in which they work." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist.*, 391 U.S. 563, 568

24    (1968). The Ninth Circuit Court of Appeals has repeatedly agreed with this application of the

25    First Amendment to educators. *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 514 (9th Cir.

26    2004) ("We have long recognized 'the importance of allowing teachers to speak out on school

27    matters,' because '[t]eachers are, as a class, the members of a community most likely to have

28    informed and definite opinions' on such matters"); *Lambert v. Richard,* 59 F.3d 134 (9th Cir.

1    1995) (fact that library supervisor "treated employees in an abusive and intimidating manner"

2    implicated employee's "Constitutional right—and perhaps a civic duty" to give speech criticizing

3    supervisor in public forum); *see also Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) ("There

4    could be no confusion, however, that when Eng 'comment[ed] upon matters of public concern'

5    'as a citizen' and *not* pursuant to his job responsibilities, his speech *was* protected by the First

6    Amendment—that rule had long been the law of the land") (emphasis in original).

7            Defendants contend that there is no clearly established right to "be free from increased

8    supervision and possible termination after making shocking public statements likening the school

9    superintendent to Adolf Hitler." (Motion to Dismiss 6:11-12, ECF No. 16.) But such a framing of

10   Plaintiff's allegations is misleading and does not address the underlying issue. Case law expressly

11   protects the First Amendment rights of educators to criticize their superiors, particularly when it

12   occurs at the appropriate time and place (*i.e.*, a public school board meeting). *Lewis v. Harrison*

13   *Sch. Dist. No. 1*, 805 F.2d 310, 316 (8th Cir. 1986) ("The public and all teachers had a right to be

14   informed over these events. Speech is not unprotected under the Constitution just because it is

15   critical, even when its criticism is bluntly worded and directed at specific governmental

16   officials").

17           Defendants also cite a number of cases for the proposition that employers do not violate

18   educators' First Amendment rights by disciplining them for racist or anti-Semitic comments made

19   in public. (Motion to Dismiss 7:12-8:3, ECF No. 16, *citing Jeffries v. Harleston*, 52 F.3d 9 (2d

20   Cir. 1994); *Locurto v. Giuliani*, 447 F.3d 159, 183 (2d Cir. 2006); *Pappas v. Giuliani*, 290 F.3d

21   143, 145 (2d Cir. 2002).) But there is a distinction between invidiously discriminatory comments

22   directed at an entire ethnic or religious group and critical comments directed at the management

23   style of a particular individual. Even if there is no clearly established right to make the former, the

24   latter falls within the realm of First Amendment protection. *Settlegoode v. Portland Pub. Schs.*,

25   371 F.3d 503, 514 (9th Cir. 2004), *citing Connick v. Myers*, 461 U.S. 138, 162 (1983).

26           **2.  *The facts alleged show a violation of a constitutional right.***

27           Plaintiff has also adequately alleged a violation of his First Amendment rights. To find a

28   claim for a violation of First Amendment rights under a theory of retaliation, the Court must

9

1   examine: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff

2   spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a

3   substantial or motivating factor in the adverse employment action; (4) whether the state had an

4   adequate justification for treating the employee differently from other members of the

5   general public; and (5) whether the state would have taken the adverse employment action even

6   absent the protected speech." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013); *see also*

7   *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (reformulating the elements to say

8   that "an employee must show (1) that he or she engaged in protected speech; (2) that the

9   employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or

10  motivating' factor of the adverse employment action").

11          Some of these factors may rely on questions of fact that have not yet been resolved or

12  explored at this stage in the litigation. In particular, (4) and (5) will turn on evidence put forward

13  by Defendants. Because Defendants have chosen to assert qualified immunity in a motion to

14  dismiss under Rule 12(b)(6), however, the Court must construe all factual allegations as true and

15  in favor of Plaintiff. There are inadequate facts in the Complaint to suggest either that:  (1)

16  Defendants had a legitimate, non-retaliatory reason for subjecting Plaintiff to adverse

17  employment actions; or (2) Defendants had an adequate (and legitimate) justification for treating

18  Plaintiff differently from other members of the public. As a result, the Court will only consider

19  the first three factors in deciding whether a constitutional violation has occurred.

20          Here, Plaintiff has adequately alleged that he spoke on a topic of public concern at the

21  August 2012 school board meeting, which was convened for the purpose of public comment.

22  Comments by educators about "whether students are receiving the type of attention and education

23  that they deserve" are of public importance. *Settlegoode*, 371 F.3d at 514 ("Whether or not

24  Settlegoode's assertions were accurate, or were communicated in the best manner possible, it is

25  clear that the subject matter of her expression was of public importance"). Even comments critical

26  of school personnel decisions or criticizing school leadership are matters of public concern.

27  *Lewis*, 805 F.2d at 314 ("The superintendent of schools was proposing to transfer a teacher and

28  varsity coach. Because teachers and coaches in a public school district can deeply impact

1   children's lives, school personnel assignments obviously are of considerable concern to those

2   children, their parents, and others in the community"); *Wasson v. Sonoma Cnty. Jr. Coll. Dist.*, 4

3   F.Supp.2d 893, 904 (N.D. Cal. 1997) ("The letters for which Wasson was disciplined comment

4   upon Agrella's fitness to be president of the college, a matter that is clearly of public concern").

5   Here Plaintiff alleges that his comments occurred at a public community meeting convened by the

6   school board to discuss the impending transfer of an "extremely popular and effective principal"

7   from Los Banos High School. (Complaint ¶ 12, ECF No. 2.) Because the transfer--and Tietjen,

8   the individual responsible for the transfer--were subjects of public concern, the Court sees little

9   reason that Plaintiff's comments on those topics should be considered otherwise.

10          Similarly, the facts alleged indicate that Plaintiff was speaking in his capacity as a private

11   citizen, rather than as a public employee, at the August 2012 meeting. No facts in the Complaint

12   indicate that Plaintiff was required to appear at the meeting, which was open to the general

13   public, as part of his job duties, nor was he ever instructed by any supervisors to appear at the

14   meeting. Moreover, the allegations that Plaintiff was harassed by his supervisors after his speech

15   strongly suggest that his speech was not in the fulfillment of his job duties. *Dahlia*, 735 F.3d at

16   1075 ("the fact that an employee is threatened or harassed by his superiors for engaging in a

17   particular type of speech provides strong evidence that the act of speech was not, as a 'practical'

18   matter, within the employee's job duties"), *citing Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

19          The allegations in the Complaint are also adequate to conclude that Plaintiff suffered

20   adverse employment actions and that his protected activity was a substantial or motivating factor

21   in those actions. Plaintiff alleges that, among other things, he was reassigned to teach a less

22   desirable course, placed on unpaid suspension, and served with multiple notices of his termination

23   after his speech at the August 2012 meeting. Any of these would be sufficient to demonstrate that

24   Plaintiff has suffered an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*,

25   548 U.S. 53 (2006) ("the EEOC has consistently found '[r]etaliatory work assignments' to be a

26   classic and 'widely recognized' example of 'forbidden retaliation'"); *Raad v. Fairbanks N. Star*

27   *Borough Sch. Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003) (teacher "suffered an adverse

28   employment action when the District issued its disciplinary suspension"); *Coszalter v. City of*

*Salem*, 320 F.3d 968, 976-977 (9th Cir. 2003) (adopting EEOC guidelines to define "adverse employment action" and applying those guidelines to find that "some, perhaps all, of the following acts, considered individually, were adverse employment actions for purposes of plaintiffs' First Amendment retaliation suit: the transfer to new duties (# 2); an unwarranted disciplinary investigation (# 4); an unwarranted assignment of blame (# 6); a reprimand containing a false accusation (# 8); a criminal investigation (# 15); repeated and ongoing verbal harassment and humiliation (# 15); the circulation of a petition at the encouragement of management (# 16); a ten-day suspension from work (# 17); a threat of disciplinary action (# 20); an unpleasant work assignment (# 21); a withholding of customary public recognition (# 26); an unwarranted disciplinary action (# 30); and two consecutive ninety-day "special" reviews of work quality (# 29 and # 31)").

Finally, Plaintiff has adequately alleged that his protected speech was a substantial or motivating factor in the adverse employment actions. Prevailing case law has held that plaintiffs may "show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions" by, among other things: (1) "introduc[ing] evidence regarding the 'proximity in time between the protected action and the allegedly retaliatory employment decision'"; (2) "introduc[ing] evidence that 'his employer expressed opposition to his speech"; or, (3) "introduc[ing] evidence that 'his employer's proffered explanations for the adverse employment action were false and pre-textual.'" *Coszalter*, 320 F.3d at 977, *quoting Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001). Plaintiff has alleged all three in the Complaint:  the adverse employment actions began shortly following his speech at the August 2012 meeting, Defendant Tietjen was "visibly enraged" by Plaintiff's speech, and Defendants "trumped up allegations" of harassment against Plaintiff. (Complaint ¶¶ 15, 16, 17, ECF No. 2.) Indeed, rather than contest the allegations that the adverse employment actions were the result of Plaintiff's protected activity, Defendants argue that they should have retaliated even further against Plaintiff. (Motion to Dismiss 8:6-11 (". . . any reasonable school official would have every reason to believe that increasing supervision of a teacher who publicly likened school officials to Adolf Hitler and unabashedly stated discontent for school officials in a small town

1  using 'colorful and challenging' language on multiple occasions would not only be appropriate,

2  but that more severe punishment, such as termination, was likely warranted"), ECF No. 16.)

3        Plaintiff has sufficiently alleged a violation of his First Amendment rights. Accepting all

4  allegations as true, he has also demonstrated that his rights, as alleged, were clearly established

5  and that Defendants are not entitled to qualified immunity. In at least one case, the Ninth Circuit

6  Court of Appeals has found similarly. In *Lambert v. Richard*, 59 F.3d 134 (9th Cir. 1995),

7  plaintiff was an employee of the public library system in Santa Ana, California. Plaintiff appeared

8  at a local city council meeting and delivered a speech that was sharply critical of defendant, the

9  Library Director who managed the public library system. In her speech, she told everyone present

10 at the meeting that the library was "barely" functioning and that the employees at the library were

11 performing their duties "devoid of zest, with leaden hearts and wooden hands," as a result of

12 defendant's leadership. *Id.* at 136.

13       Shortly after plaintiff's speech, the defendant in *Lambert* issued a letter of reprimand to

14 plaintiff. Plaintiff sued, alleging that her First Amendment rights had been violated and that she

15 had been subjected to retaliatory treatment for her protected speech. In evaluating plaintiff's

16 claims, the Ninth Circuit easily concluded that plaintiff's remarks were "clearly protected" and

17 that defendant was "not entitled to qualified immunity." *Id.* at 137. Citing the public nature of the

18 forum in which plaintiff gave the speech, the contents of her criticism, and the importance of the

19 information she was providing to the public, the court held that a reasonable public official

20 "would have recognized that [his] conduct was unlawful." *Id.*

21       The Court sees little reason to depart from the *Lambert* court's reasoning and finds that

22 reasonable public officials in Defendants' positions would have recognized that the conduct

23 alleged in the Complaint was unlawful. Defendants are not entitled to qualified immunity.

24 **C. Declaratory Relief**

25       Defendants argue that Plaintiff's Third Cause of Action, requesting declaratory judgment,

26 is predicated solely on Plaintiff's § 1983 claims. Because those claims are barred by sovereign

27 and qualified immunity, Defendants assert, the Third Cause of Action must be dismissed, as well.

28 As explained above, however, at least one of the § 1983 claims survives Defendants' qualified

1   and sovereign immunity challenges. Moreover, even sovereign immunity, which applied to

2   Plaintiff's Second Cause of Action, does not preclude a claim for declaratory judgment. *Nat'l*

3   *Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) ("we have long held that the

4   Eleventh Amendment does not generally bar declaratory judgment actions against state officers").

5   Plaintiff's Third Cause of Action thus survives the Motion to Dismiss.

6   **V.     ORDER**

7          For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART

8   Defendants' Motion to Dismiss the Complaint (ECF No. 15). Accordingly, IT IS HEREBY

9   ORDERED:

10              1)  Defendants' Motion to Dismiss Plaintiff's First Cause of Action (alleging

11                  retaliation for the exercise of Plaintiff's First Amendment rights under 42 U.S.C. §

12                  1983) is DENIED;

13              2)  Defendants' Motion to Dismiss Plaintiff's Second Cause of Action (alleging

14                  *Monell* liability under 42 U.S.C. § 1983) is GRANTED;

15              3)  Defendants' Motion to Dismiss Plaintiff's Third Cause of Action (for declaratory

16                  relief under 28 U.S.C. § 2201) is DENIED.

17

18

19

20   IT IS SO ORDERED.

21      Dated:   __**October 28, 2015**__          _/s/_ _Erica P. Grosjean_

22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

14