UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DUFFY,<br><br>Plaintiff,<br><br>v.<br><br>LOS BANOS UNIFIED SCHOOL DISTRICT; STEVE TIETJEN; RYAN HARTSOCH; DANIEL SUTTON; VELI GURGEN; and DOES 1-10,<br><br>Defendants. | **Case No. 1:15-cv-00423-EPG**<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 60) |

## I. INTRODUCTION

On June 5, 2017, Defendants filed a motion for summary judgment or, in the alternative, summary adjudication in this First Amendment retaliation action. (ECF NO. 60.) At hearing before the Court on August 4, 2017, Kevin Little, Esq. appeared for Plaintiff and Stephanie Wu, Esq. appeared for Defendants. After oral arguments, the motion was taken under submission. For the reasons set forth below, Defendants' motion for summary judgment or, in the alternative, summary adjudication is DENIED.

**II. BACKGROUND**

Plaintiff Mark Duffy brings this suit against Los Banos Unified School District ("LBUSD" or "the District"), Dr. Steve Tietjen, Ryan Hartsoch, Daniel Sutton, and Veli Gurgen pursuant to 42 U.S.C. § 1983 alleging First Amendment retaliation in connection with his employment as a High School English teacher in the LBUSD. Plaintiff began teaching at Los Banos High School in 2006. Defendant Dr. Steve Tietjen ("Tietjen") was the Superintendent of the District from 2007 to July 1, 2016. In August 2012, Tietjen announced that Daniel Martin, then the Principal of Los Banos High School, would be reassigned to an administrative position. On August 9, 2012, a meeting of the Board of Education of the Los Banos School District ("the Board") was convened for the purpose of public comment on Mr. Martin's reassignment. The meeting was attended by members of the general public, school district employees, and students, and was televised on the local public access channel.

At the meeting, Plaintiff delivered the following speech:

> Good evening, Board. Underneath this beard, I am Mark Duffy. First of all, I want to start off by telling you that I respect this Board, and I think you are a great board. What you do is very difficult. But I'm not here tonight to talk about Dan Martin. I don't care who the principal of the school is. It means nothing to me. I welcome working with Mr. Sutton or whoever Dr. Tietjen signs. You may know, or most of you may know that 3½ years ago I suffered a near fatal open heart surgery. I was in a coma for nine days. I only have 50% capability in my heart. I have to carry pills with me every day of my life. I'm not supposed to be here, so I'm a very blessed man. So you can understand why who the principal of my school is, it doesn't mean anything to me.
>
> But I'll tell you what means something to me. Truth. Honesty. Dignity. Integrity. Everybody in this room tonight knows that they are here at their own peril. Everybody in this room tonight knows that repercussions and intimidation are going to hang over their head. Fear has become the standard operating procedure of this school district.
>
> I want to make a suggestion to you that when this is all said and done with, because it's all going to be over after tonight and life goes on. I want to suggest to you that you take a survey of the people that work in this school district. Keep it out of the clutches

> of the district office. Make it anonymous. That way the storm troopers will not be coming to knock down your door. I think it will be interesting to see the fruit that it bears.
>
> I know why everyone walks on eggshells in this district. And I don't want you to get me wrong, I admire Dr. Tietjen. I respect him. I admire the way that he attacks people personally. I admire the way that he hangs your job over your head if you don't do what he wants you to do. I admire the way that he encourages neighbor to rat out neighbor. I mean honestly, folks, he's really good at what he does, and that's why I admire him.
>
> Now, again, after tonight, nothing matters. I don't care who the principal is, I can work with anybody. But there's a bigger picture here that we're not looking at. And it needs to be looked at. That's where you come in. Proverbs 11:29 says, woe to the man that reaps trouble upon his own house for he shall inherit the wind.
>
> I want to remind you, a punk goes after people when they know they don't have a fair fight. They will bushwhack them. Mr. Martin's been bushwhacked. I want you to hold the same low standard that was applied to Mr. Martin to Dr. Tietjen.
>
> Now, the last thing I would like to say is after tonight everybody in this room knows what's going on, no one can say "I don't know." And I want to remind you that the last time that happened was in Germany when a people sat by compliantly while the ovens of Auschwitz burned.

(Def.'s Mot. Summ. J. Ex. C, ECF No. 60-4.)

Defendant Daniel Sutton ("Sutton") became Interim Principal of Los Banos High School from August 2012 through September 2012, and served as Assistant Principal beginning in October 2012. Defendant Ryan Hartsoch ("Hartsoch") served as Principal from October 2012 through June 2014. Defendant Veli Gurgen ("Gurgen") served as Assistant Principal beginning in September 2013.

According to Plaintiff, after his speech, Defendants engaged in a pattern of conduct designed to intimidate and harass him, and retaliated against him by taking the following adverse employment actions:

- On April 22, 2013, Hartsoch issued a letter of reprimand to Plaintiff for providing a classroom key to a student and for showing the movies *Argo* and *Life of Pi* to his Advanced Placement ("AP") English students.

- In Spring 2013, Plaintiff was informed that beginning in the 2013-2014 school year, he would be reassigned from teaching AP English to teaching English Learners and Basic English classes, exclusively.

- On June 6, 2013, Hartsoch issued a letter of reprimand to Plaintiff for calling the District's administrators "cocksuckers" and for tearing up the April 22, 2013 letter of reprimand and pretending to wipe his rear end with it during a meeting with Hartsoch.

- In the 2012-2013 school year, Plaintiff's preparation period was changed without his request.

- Beginning in the 2013-2014 school year, Hartsoch implemented a new process regarding informal walkthroughs of classrooms, which involved administrators sitting in on classes and providing the teachers with feedback on an Administrative Walkthrough Form. On August 30, 2013, September 5, 2013, September 6, 2013, and September 11, 2013, Hartsoch, Sutton, and Gurgen, respectively, performed informal walkthroughs of Plaintiff's classroom. During each walkthrough Plaintiff told a ten to fifteen minute long interactive repetitive story.

- On the Administrative Walkthrough Forms, Hartsoch, Sutton, and Gurgen stated that Plaintiff's students were not engaged during Plaintiff's telling of the interactive repetitive story.

- On September 13, 2013, Gurgen issued a letter of reprimand to Plaintiff for telling Gurgen to "get a pair of these" while holding a pair of ping pong balls in his hand.

- On September 16, 2013, Plaintiff experienced a cardiac incident on campus and was placed on extended medical leave. During the medical leave, Hartsoch reported to Tietjen that Plaintiff was flipping him off and illuminating his face with a flashlight as Hartsoch drove through their mutual neighborhood. Tietjen authorized the District to file a restraining order against Plaintiff on Hartsoch's behalf.

- On June 30, 2014, the District filed a petition for a Workplace Violence Restraining Order seeking protection for Defendant Hartsoch and his family. A temporary restraining order was granted on July 1, 2014. Defendants served Plaintiff with a Notice of Unprofessional Conduct and Unsatisfactory Performance on July 11, 2014. The notice advised Plaintiff that his employment would be terminated if his conduct did not improve in the next 45 days.

- On December 8, 2014, the District mailed to Plaintiff a "[Final] Notice and Statement of Charges That there Exists Cause to immediately Suspend Without Pay and to Dismiss a Permanent Certificated Employee." The notice charged plaintiff with misconduct beginning with incidents surrounding the April 22, 2013 letter of reprimand. The notice also charged Plaintiff with paying a fellow teacher, Jennifer Lampreda, $1,500.00 to take an online class on his behalf to obtain a Cross-Cultural, Language, and Academic Development ("CLAD") certification and with abusing the District's sick leave policies. On December 18, 2014, the Board voted to immediately

suspend Plaintiff without pay and to dismiss Plaintiff from employment. On December 19, 2014, Plaintiff was served with another notice of intended termination.

Plaintiff commenced this action on March 17, 2015, seeking from the District injunctive relief, and compensatory damages and attorney's fees and expenses for *Monell* liability. Plaintiff also seeks compensatory damages, punitive damages, and attorney's fees and expenses against Tietjen, Hartsoch, Sutton, and Gurgen for First Amendment retaliation.

On May 19, 2015, Defendants moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6). (ECF No. 15.) By Order dated October 28, 2015, this Court granted Defendants' motion to dismiss Plaintiff's *Monell* claim against the District, but denied Defendants' motion to dismiss Plaintiff's remaining causes of action.

Now pending before the Court is Defendants' motion for summary judgment, or alternatively, summary adjudication, on the grounds that (1) Plaintiff cannot establish that his speech addressed a matter of public concern, (2) Plaintiff cannot establish that his speech was a substantial or motivating factor in each Defendant's allegedly adverse employment actions against him. Plaintiff Mark Duffy filed a timely opposition to this motion, and (3) the adverse employment actions would have been taken even in the absence of Plaintiff's speech.

### III. LEGAL STANDARD

On a summary judgment motion, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Once the moving party meets its initial burden, the non-moving party must 'go beyond

the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court "is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988). "A party opposing summary judgment must direct our attention to specific, triable facts." *S. California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003). "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 1413.

### IV. DISCUSSION

The U.S. Supreme Court long ago established that teachers enjoy the First Amendment right to "comment on matters of public interest in connection with the operation of the public schools in which they work." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968). The Ninth Circuit Court of Appeals has repeatedly agreed with this application of the First Amendment to educators. *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 514 (9th Cir. 2004) ("We have long recognized 'the importance of allowing teachers to speak out on school matters,' because '[t]eachers are, as a class, the members of a community most likely to have informed and definite opinions' on such matters"); *Lambert v. Richard*, 59 F.3d 134 (9th Cir. 1995) (fact that library supervisor "treated employees in an abusive and intimidating manner" implicated employee's "Constitutional right—and perhaps a civic duty" to give speech criticizing supervisor in public forum); *see also Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) ("There could be no confusion, however, that when Eng 'comment[ed] upon matters of public concern' 'as a citizen' and not pursuant to his job responsibilities, his speech was protected by the First Amendment—that rule had long been the law of the land") (emphasis in original). In *Dahlia v.*

*Rodriguez*, the Ninth Circuit outlined a five-step test to evaluate whether a government employee's speech is entitled to First Amendment protection. 735 F.3d 1060, 1067 (9th Cir. 2013). A Court evaluating a First Amendment retaliation claim must ask: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.*

**A. Whether Plaintiff Spoke on a Matter of Public Concern**

Defendants argue they are entitled to summary judgment because Plaintiff's speech did not address a matter of public concern. (Def.'s Mot. Summ. J. 7-9, ECF No. 60-1.) Defendants assert that Plaintiff did not "make any allegations or statements relating to any 'actual or potential wrongdoing or breach of public.'" *Id.* at 9. Furthermore, Plaintiff's speech was motivated by his distaste for Dr. Tietjen's administrative style and his dissatisfaction with the administration. *Id.* In opposition, Plaintiff argues that his speech was addressed to public concerns because it was made during a public meeting, was made in Plaintiff's capacity as a citizen rather than a public employee, and was made to inform the community about the management of the LBUSD and how Dr. Tietjen's administration has cause the school district to lose good teachers. (Pl.'s Opp'n. 4-6, ECF No.64.)

A public employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering*, 391 U.S. at 571. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The Court must examine whether the content of the speech bears on "issues about which

information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). A speech "focused solely on internal policy and personnel grievances does not implicate the First Amendment." *Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir.1992), *cert. denied*, 508 U.S. 908 (1993). Similarly, the Court must examine the context of the speech in terms of the plaintiff's point or motivation for delivering the speech. *Desrochers*, 572 F.3d at 715. A speech made to "further some purely private interest" does not implicate the First Amendment. *Havekost v. U.S. Dep't of Navy*, 925 F.2d 316, 318 (9th Cir. 1991).

For example, in *Lambert v. Richard*, the plaintiff, a library employee, spoke at a televised city council meeting in her capacity as a union representative of the city's employees association. 59 F.3d 134, 135-37 (9th Cir. 1995). Prior to the meeting, the city's employees association protested the Library Director's management practices, asserting that "he treated employees in an abusive and intimidating matter, and that [his] conduct was having an adverse effect on service to the public." *Id* at 136. At the council meeting, the plaintiff read a prepared statement criticizing the Library Director. *Id.* at 135. She asserted that the library was barely functioning and that library employees were underperforming due to the Library Director's management practices. *Id.* at 136. She also requested that the City Council turn over to the city's employees association a study of library staff attitudes toward the Library Director. *Id.* The Library Director issued a letter of reprimand to the plaintiff. *Id.* at 137. The Plaintiff sued, alleging violation of the First Amendment. *Id.* at 136. The library argued that the plaintiff's speech was not entitled to First Amendment protection because it was "a petty personnel grievance" and not a matter of public concern. The Ninth Circuit found that the plaintiff's speech addressed a matter of public concern. *Id.* at 137. The court reasoned, "Given that operation of a public library is among the most visible of the functions performed by city governments, Lambert had a Constitutional right—and perhaps

a civic duty—to inform the council if library service was jeopardized by poor management at the top." *Id.* at 136. The court further found the fact that the plaintiff spoke at a televised city council meeting underlined the public nature of the issues discussed in the plaintiff's speech. *Id.* at 137.

Here, Defendants have failed to establish that Plaintiff's speech was not a matter of public concern entitled to First Amendment protection. The evidence establishes that Plaintiff's speech was delivered at a televised school board meeting. (Def.'s Mot. Summ. J. 2.) Plaintiff spoke not pursuant to his job responsibilities, but as a citizen of the Los Banos community. (Duffy Dep. 15: 1-5, July 15, 2016, ECF No. 66.) The meeting was convened for the purpose of public comment on the reassignment of Daniel Martin. (Def.'s Mot. Summ. J. 2). At the meeting, Plaintiff commented on Mr. Martin's reassignment, stating, "I want to remind you, a punk goes after people when they know they don't have a fair fight. They will bushwhack them. Mr. Martin's been bushwhacked." (Def.'s Mot. Summ. J. Ex. C, ECF No. 60-4.) Plaintiff's speech also criticized Dr. Tietjen's management practices and asserted Tietjen's mismanagement had precipitated the loss of good teachers in the school district. *Id.* Plaintiff stated:

> "Fear has become the standard operating procedure of this school district. . . . I know why everyone walks on eggshells in this district. And I don't want you to get me wrong, I admire Dr. Tietjen. I respect him. I admire the way that he attacks people personally. I admire the way that he hangs your job over your head if you don't do what he wants you to do. I admire the way that he encourages neighbor to rat out neighbor. I mean honestly, folks, he's really good at what he does, and that's why I admire him."

*Id.* Plaintiff also suggested that the community conduct an anonymous survey of school district employees. *Id.* Furthermore, in his deposition testimony, Plaintiff stated that he was motivated to deliver the speech to inform the community of the practices of the LBUSD that were leading to the loss of good teachers. (Duff Dep. 15:1-5.) Thus, like in *Lambert*, Defendants' characterization of Plaintiff's speech as a personnel grievance by a dissatisfied employee is belied by the fact that

9

plaintiff spoke at a televised school board meeting, spoke as a citizen of the Los Banos community, and spoke to inform the Los Banos community about an issue that was having potentially adverse effect on the school district's service to the community. Accordingly, Defendants have failed to meet their burden of establishing that Plaintiff's speech was not a matter of public concern entitled to protection under the First Amendment.

**B. Whether Plaintiff's Speech was a Substantial or Motivating Factor in the Adverse Employment Actions**

"Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). Where the defendant knew of the protected speech, the Ninth Circuit has identified three kinds of circumstantial evidence that create a genuine issue of material fact as to whether retaliation was a substantial or motivating factor behind an adverse employment action: (1) evidence regarding the "proximity in time between the protected action and the allegedly retaliatory employment decision"; (2) evidence that the "employer expressed opposition to his speech"; or, (3) evidence that the "employer's proffered explanations for the adverse employment action were false and pretextual." *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001).

Here, Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish that his speech was a substantial or motivating factor for any of the alleged adverse employment actions. First, Defendants argue that the temporal proximity of Plaintiff's speech and the alleged adverse employment actions is too remote to raise a triable issue of material fact. (Def.'s Mot. Summ. J. 11.) However, there is no specified time period that is *per se* too long for a finding of retaliatory motive. *Coszalter*, 320 F.3d at 978. Depending on the circumstances, adverse actions that are taken three months, eight months, or even eleven months after a plaintiff's protected speech can support an inference of retaliation. *Id.* at 977; *see also*

*Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) (finding that an eleven-month gap in time between a protected speech and an adverse action can support an inference that an employment decision was retaliatory). Furthermore, Plaintiff has presented evidence that after his speech, he was perceived in the District as a "marked man." (J. Adams Dep. 23:11-13, August 19, 2016, ECF No. 66.) Moreover, there exists a dispute of fact as to when Defendants initiated the first adverse employment action against Plaintiff. Defendants argue that the first adverse employment action was a letter of reprimand issued eight months after Plaintiff's protected speech. (Def.'s Reply Mot. Summ. J. 7-8.) Plaintiff, however, argues that the first adverse employment action was his reassignment to teaching English Learners and Basic English classes. (Pl.'s Opp'n. 13-14.) Although Plaintiff's reassignment took effect in the fall of 2013, plaintiff has offered evidence that the reassignment may have been initiated as early as November 2012, which was within three after Plaintiff's speech. (Sutton Dep. 99:1-19; 108:24-109:12, April 26, 2016, ECF NO. 66.) Thus, in light of the surrounding circumstances, Defendants have failed to establish that the proximity in time between the protected action and the allegedly retaliatory employment decision is too remote to raise a triable issue of material fact.

Second, Defendants argue that the adverse employment actions were legitimate, reasonable, and normal administrative actions taken to discipline Plaintiff for his misbehavior. (Def.'s Reply Mot. Summ. J. 8.) However, Plaintiff has introduced evidence that at least some of Defendants' explanations could be pretextual. Defendants state that Plaintiff was reassigned from teaching AP classes because there were disparities between students' AP scores and their AP English class grades. But, Defendants are unable to consistently identify the exact disparity or attribute this disparity to Plaintiff's performance. (Tietjen Dep. 15:8-20:7, May 5, 2016, ECF No. 66; Hartsoch Dep. 11:5-15:18, May 11, 2016, ECF No. 66.; Sutton Dep. 21:23-23:8, April 26, 2016, ECF No. 66.) Plaintiff has also introduced evidence that Defendants lacked

11

evenhandedness in their implementation of policies as against Plaintiff. Defendants completed walkthroughs in Plaintiff's classroom more frequently than in other teacher's classrooms and disciplined Plaintiff for activities that other teachers engaged in but for which were not disciplined. (Y. Adams Dep. 47:8-48:3; 50:2-13, August 19, 2016, ECF No. 66.) Lastly, Plaintiff has introduced evidence that Defendants failed to follow standard procedures in implementing adverse employment action against him. Defendants did not investigate the CLAD allegations against Plaintiff before presenting them to the Board, an atypical occurrence in the School District. (Atkins Dep. 26:11-25; 27:4-9, July 14, 2016, ECF No. 66). Thus, Plaintiff has presented evidence creating a factual issue as to whether Defendants' explanations for the adverse employment actions were false and pretextual. *See e.g. Coszalter*, 320 F.3d at 978 (finding that the failure to implement clear and evenhanded policies regarding discipline provided additional evidence that the defendants' proffered explanation for the adverse employment actions was pretextual); *Allen*, 283 F.3d at 1078 (finding that misrepresentations and the failure to follow standard procedures both permitted an inference that the reasons given an employer for an adverse employment action was false and pretextual).

Third, Defendants argue that there is no evidence that Defendants expressed opposition to Plaintiff's speech. (Def.'s Mot. Summ. J. 12.) However, Defendant Tietjen testified at deposition that he found Plaintiff's comments insulting. (Tietjen Dep. 12:8-13:10.) It was commonly discussed in the District that Tietjen did not like Plaintiff. (Atkins Dep. 16:24-17:16.) Furthermore, Plaintiff introduced evidence that Tietjen advocated for Plaintiff's suspension and eventual termination. (Atkins Dep. 15:1-11, 16:8-14; Parreira Dep. 15:16-20; 37:10-17, July 14, 2016; Enos Dep. 22:1-13, July 14, 2016.) Accordingly, Plaintiff has presented evidence creating a factual dispute as to whether retaliation was a substantial or motivating factor behind the adverse employment actions against him.

### C. Whether Defendants Would Have Taken The Adverse Employment Actions Even Absent Plaintiff's Speech

Even if Plaintiff is able to show that his protected speech was a substantial or motivating factor in the adverse employment action, Defendants may escape liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The inquiry is purely a question of fact. *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009). "It is the defendant's affirmative burden to prove that it would have taken the adverse action if the proper reason alone had existed." *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996).

Here, Defendants argue they would have reached the same decision even in the absence of plaintiff's speech. They assert that Plaintiff engaged in unprofessional conduct sufficient to warrant the alleged retaliatory conduct against him and ultimately his termination from employment. (Def.'s Mot. Summ. J. 13.) However, the crux of Plaintiff's claim is that Defendants' allegations of unprofessional conduct are themselves retaliatory. Plaintiff alleges that Defendants made a record against him by citing and disciplining him for minor issues for which other teachers who curried favor with Defendant Tietjen were not disciplined. Compl. ¶ 16. Plaintiff also presented evidence that he was not alone in violating the policies for which he was reprimanded. (Marshall Dep. 87:2-88-6; Tietjen Dep. 32:8-12; Sutton Dep. 80:4-25.). Furthermore, Plaintiff alleges that he "challenged and criticized" Defendants' retaliation against him "by continuing to blast them and object to" the adverse employment actions and "by expressing his personal displeasure . . . sometimes in very colorful ways." Compl. ¶ 17. Thus, taking Plaintiff's version of facts as true, Defendants have failed to meet their burden of establishing Plaintiff's speech was not a but-for cause of the adverse employment actions.

## V. CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment or, in the alternative, summary adjudication (ECF No. 60) is DENIED.

IT IS SO ORDERED.

Dated: **September 5, 2017**

/s/ *Eric P. Groig*
UNITED STATES MAGISTRATE JUDGE